Jerusha Shockley, et al., vs. S. W. Brown, Holstein, et al.

This court will uphold a description of land approved by the Executive Department of the government, contained in the notice filed in the Surveyor General's office, pursuant to Section 6, of the Donation Act, although the description be loose and somewhat indefinite.

Ordinarily the issuance of patent is such a final decision of the Executive Department respecting title to the land patented, as will give the courts

jurisdiction, and especially in favor of the party seeking to set it aside.

A plaintiff, claiming title under the Donation Act, is not required to state in his complaint that the land claimed was not within one mile of a military post or reservation (Section 9.)   If advantage is to be taken of this fact it must be by way of defense.

Title to land cannot be acquired under the Donation Act, by virtue of settlement and cultivation subsequent to December 1850, without first making affidavit to the several requirements prescribed by Section 12 of that act.

When the object of a complaint is to establish title under the Donation Act, and it does not show compliance with the several requirements enumerated in Section 12 of that act, it fails to state facts sufficient to constitute a cause of action.

Error to the Second Judicial District, holding terms at Vancouver.

*Shattuck* for plaintiff in error.

*H. G. Struve* and *J. M. Fletcher* for defendants in error.

Opinion by Greene, Associate Justice.

This cause is presented on demurrer to the plaintiffs' complaint.  The court below held the complaint insufficient, and the plaintiff electing to stand by his pleading, suffered judgment which is here assigned for error.

The bill or complaint was brought by appellant, claiming as a settler under the Donation Act of 1850, to set aside a title, in appellees resting on patent, from the United States, under the homestead law.

Many particulars in which the complaint is alleged to be faulty, have been called to the attention of the court by counsel for appellee.

1.   It is objected, that the bill does not set forth that pursuant to the sixth section of the Donation Act, the deceased husband of the plaintiff, Mrs. Shockley, filed with the surveyor general a notice in writing, citing all required particulars.

The notice set forth contained no description of the land, save this, in substance:  "Beginning at a stake in the woods, about a mile south of Fort Vancouver, and running thence north one mile; thence west one mile; thence south one mile; thence east one mile to the place of beginning."

It is insisted that this notice is too indefinite; that a notice so definite should have been given as would enable the agents of the government to segregate the land claimed from the public domain, and as would permit subsequent settlers, safely and certainly to fix their own boundaries.

It cannot be denied that this objection seems founded in reason, but from the best information we can obtain of the practice of the land office, considerable particularity, or certainity of description, prior to public survey, or the inception of an adjoining claim has never been required of claimants under the land laws, and we feel that true public policy requires us to follow in this regard the executive department of the government.

The complaint alleges that prior to settlement by Holstein, plaintiff's boundaries were accurately enough defined to bring home knowledge of them to defendants. Whether in fact they were is not for us to try. If the complaint sufficiently avers they were, its averments must be taken to be true upon demurrer.

The complaint sets up an amended notice of boundaries, which was filed upon the extension of the public surveys over the land.

On these boundaries the plaintiffs now rely, and it is within them that the bill alleges the land patented, to defendants falls.

It is contended by defendants, however, that these boundaries appear on the face of the bill not to include the same land, or that included in the bounds specified in the original notice.

But the bill states the land patented to defendants is parcel of the land originally, as well as in the amended notice, bounded and described, and for the purposes of this appeal this statement is regarded true.

Moreover the bill states that the defendants' claim accrued subsequent to the amended notice.

If this be so, then, under the prevalent practice of the land office and concurring decisions of the courts allowing settlers to modify their claims after public survey, the defendants' intrusion on this land as last bounded is bad.

59

The allegations of the bill seem to us sufficiently to show that the original claim was not, in the light of executive practice and judicial decisions, so substantially varied as to avoid the claim *ab initio*. *Carter vs. Chapman*, 2 Oregon, 93.

2.   It is objected that it does not appear from the bill that the land now claimed is the same land originally claimed.

An inspection of the bill, however, discloses a direct allegation that the land in controversy is land originally claimed,— were the fact otherwise it would not, as we have already indicated, necessarily under the practice of the land department, and the law as adjudged, avoid the plaintiff's claim to this land.

3.   Again it is objected that it does not appear that the questions, arising under the Donation Act in regard to this land, have before coming into court been finally determined in the land department. Upon this point the majority of the court are of the opinion that the issue of the patent, which is the foundation of defendants' title, must be deemed a final decision by that department, at least as to the plaintiff's right to the land so patented.

4.   It is objected further, that it does not appear, that the lands claimed are not within one mile of a military post, or tract reserved for a military post (Section 9 Donation Act). It is, in our opinion, unnecessary that the plaintiff should plead this; if advantage of it is to be taken, it must be way of answer.

5.   And lastly, it is objected, that it does not appear that the requirement of the 12th section of the Donation Act has been obeyed. That section requires, that "all persons claiming, under any of the provisions of this act, by virtue of settlement and cultivation, commenced subsequent to the first of December, in the year 1850, shall *first* make affidavit * * * that the land claimed by them is for their own use and cultivation; that they are not acting, directly or indirectly, as agent for, or in employment of, others, in making such claims; and that they have made no sale, or transfer, or any arrangement, or agreement for any sale, transfer, or alienation of the same, or by which the said land shall inure to the benefit of any other person.

This requirement is reasonable toward the government, beneficial toward the settlers, easy to be complied with, and positive in terms. "*All* * * * *shall* * * *first*" is the select, per-emptory form of language adopted by the Congress, to express the people's will.

Nothing difficult, or intricate, or hard to be understood, is indicated to be done; nothing but to take a plain oath or affirmation, which no honest claimant could decline.

It was for the advantage of *bona fide* settlers, that all the public land should be open to them for selection and settlement, and to them exclusively.

And it was for the interest of the whole people represented in the general government, that the end of the Donation Act, which was to encourage settlement and cultivation in good faith, should not be swung as a gate for the inroad of a swarm of speculators, crowding in, not to abide and keep, and protect, but hastily to over-run, devour, and go again, leaving the whole country not only waste, but so locked up behind them, that the people's most productive domestic servant, and most devoted and resolute defender, a loyal resident population, might not enter.

From this complaint it does not appear that the settler first made affidavit according to the requirement of the statute, as we understand that requirement, that is to say, preliminary to asserting his claim in the land office. But it is contended that the word "first" means before complete compliance with the statute and issuance of patent, and that it does appear that the settler's widow, after his decease, sufficiently met the intent of the law, by an affidavit set out by the bill. Assuming the appellant's position, regarding the time of making the statutory affidavit, to be correct, we fail to find in the affidavit set out a sufficient compliance with the statute.

Mrs. Shockley does not make oath, as the statute prescribes, that her deceased husband "made no sale, or transfer, or any arrangement or agreement, for any sale, transfer, or alienation of the same, as by which the said land shall inure to the benefit

of any other person," but "that she believes" that her husband "never in his lifetime made any sale, transfer, agreement, or arrangement with any person, by which the said land should inure, in whole or in part, to any *other* person, and, that after his death, she has not made any such sale, transfer, or arrangement, on her part." She does not swear, as prescribed by statute, "that the land claimed by them is for their own use and *cultivation*; that they are not acting directly, or indirectly, as agent for, or in employment of others, in making such claims," but "that the said claim was for their own and sole use and benefit."

Her affidavit may not have been so intended, but it certainly does evade the explicit oath of the statute. She swears, "she believes," etc., and not directly to the fact. She swears, she believes, her husband never made any sale, etc., by which the land should inure to *any other person, than the person, or persons with whom he made such sale, etc.*; and though she, further on, swears that the claim was for their "own and sole use and benefit."

She does not meet the case intended to be forestalled by the statute, for one might, for his "own and sole use and benefit" take a claim for speculation, and even under a pre-arrangement to transfer.

That word "was" is very vague and accords with the general looseness of her affidavit. "*Was* for their own and sole use and benefit"? At what time? At the inception of the claim, or after some arrangement to sell, or employment to buy, had fallen through?

Mrs. Shockley does not affect to swear that the claim was taken for their own cultivation.

There is clearly no affidavit within the 12th section of the Donation Act.

This last objection to the complaint is fatal to it.

The judgment of the court below is affirmed.